Good afternoon. May it please the court. I'd like to suggest with a little bit of trepidation that this is an exceedingly simple and narrow dispute. In our uncontested facts, which are found in our record excerpts at page 53 and 54, it's uncontested that the trust instrument designates a sole beneficiary, the old Marshall Heritage Foundation. Secondly, that's uncontested. Secondly, it's uncontested that that foundation no longer exists. That's admitted. It's uncontested that the trust instrument provides that if that entity ceases to exist as a tax qualified entity, the successor beneficiary shall be determined by the trustees in their sole discretion from time to time. That's uncontested. It's uncontested that what that means in the context of this trust is that both trustees have to decide with unanimity. That's uncontested. And then finally, and most importantly, it's uncontested that there has been absolutely no amendment to the trust instrument to substitute or designate the plaintiff in interest as a successor beneficiary. So that's a summary judgment evidence. It's uncontested. And the conclusion that we would ask you to draw is that the plaintiff in interest is not a beneficiary of the trust and therefore has no standing to the record. Why did Preston, for the appellant, pay out from the Paroxysome Trust for two years to the split entities? Why did he do that for two years if the trust instrument, you know, clearly doesn't recognize the split entities? I know that's probably the wrong term as beneficiary. Well, at the time that the second provision kicks in, the original Marshall Heritage Foundation ceases to exist. So now what happens? The two trustees decide from time to time who the successor beneficiaries are going to be. And for two years, Preston agreed. He's acting in good faith. Let's try to make this deal work. I'll continue to authorize this third party, really, as a successor beneficiary. You're saying he could, you said in the instrument, let him do that, but he didn't have to. Correct. Exactly. It didn't require him to do that. Under Louisiana law, section 9, colon 2030, it says a trustee may divide a trust into two or more trusts on written notice to all beneficiaries. Louisiana law allowed the original beneficiary to be divided. And what provision do you say specifically says notwithstanding what Louisiana law would otherwise allow, the trustees under this trust cannot divide this trust into two successor trusts? Very good question, Judge. And that's the same question that Judge Fallon asked. And there really wasn't authority either way. We would suggest that the authority is first and foremost in the trust agreement itself and also comes from the provision that Your Honor just cited, which is 2030, because it specifically limits the division or decantation to the assets of the trust at the time of the division. No, not the assets. It says the market value of the assets, not the assets themselves. That's the division shall be based on the fair market value of the assets, the fair market value of the assets. Of the assets of the trust at the time of the division. And so at the time of the division, the potential for future distributions was not an asset of the trust. And that is provided for by a case that they cite, which is the Louisiana Supreme Court In re Marshall Charitable Trust decision in which the court specifically says that first, quote, title to the property is vested in the trustee. Secondly, until the funds are dispersed, they're not the property of, in that case, Mr. Marshall. In this case, it would be the Marshall Heritage Foundation. And third, quote, Mr. Marshall, in that case, in this case, the Marshall Heritage Foundation did not have an independent property right or real right to the undisbursed income. That's 709 Southern 2nd at 667 to 668. And so Your Honor asked the same question as Judge Fallon, which was, where is the authority proposition that you that you can't do this? And we don't contest that you can divide a trust, you can divide a trust. But we're looking at this as a beneficiary, not as a trust. It happens to be a trust. And it doesn't, that provision, in addition to the present assets point I just made, doesn't impose any obligations or effects or duties on other third parties like obligors or donees. Doesn't change the paroxysome trust instrument. It allows the Marshall Heritage Foundation to divide itself, but that doesn't necessarily mean as a matter of law that that has effects on a third party, which is the paroxysome trust. It doesn't rewrite the trust instrument. And in fact, if you look at, there's three things that the defendants point to. Excuse me, plaintiffs point to. Back on page 54 of the uncontested facts. They admit the five facts that I set out, but they say that this last fact, that the trust wasn't amended, is immaterial. They give three points for that. One is the one that your honor pointed to, which was section 92030. The other two things that they point to are a resolution of the Marshall Heritage Foundation. Well, that's the beneficiary. The beneficiary doesn't get to decide who the successor beneficiary is. Only the trustees or the trust instrument can decide that. And that is provided for, and this is a Louisiana authority. Louisiana revised statute 9 colon 2271 talks about charitable trust and it provides at the very end of that statute the beneficiaries of the trust shall be selected by the trustee or any other person pursuant to the terms of the trust instrument. You are focusing, rightly so, on the language of the paroxysm trust. Correct. And so I'm looking at, you've said a couple times, you've characterized the language as saying, if the Marshall Heritage Foundation ceases to exist, right? But as you know, the language didn't actually say that. It says, I'm reading from it, it says, if the Marshall Heritage Foundation is not an organization described in three IRC sections, at the time any payment is to be made to it. Now, as I read that, I mean, that's required by the internal revenue, that by IRS, to have that, right? Isn't the purpose of that to just make sure that the Marshall Heritage Foundation remains in compliance with those sections? That's why you have to include the language. I think what they're saying is, if at any point over the 20 years, the original Marshall Heritage Foundation is not a tax qualified entity that's entitled to receive these donations, then- It's speaking to the- The second part kicks in. Tax qualifications of the entity. My point is, it's not on its face speaking to the existence of the entity. In other words, it's not saying, well, if it divides, then all bets are off, and then the other clause kicks in. That's true, Your Honor. But I think, just as a matter of logic, our argument would be that if it doesn't exist, then it can't exist as a tax qualified entity. Yeah, the language isn't looking towards that eventuality. It's looking to something else, I guess is my- Perhaps. It could have been looking to the fact that it didn't exist at all. It's not clear to me that that language speaks one way or the other as to whether the peroxide, I don't know how to pronounce it. Peroxisome. Peroxisome trust prohibits a division under, which is otherwise permissible under state law, of that Marshall Heritage Foundation. I don't think it prohibits on its face that there would be a division. Our argument is that you can divide it, but then at that point- Well, it's saying that if you do divide it, all bets are off. To me, that's putting a lot of weight on a very small phrase in that, because all you're doing is changing one charitable trust into two. It's totally a success or an interest to, and it doesn't, its character isn't changed, it's- Well, arguably, I mean, that's the practical effect, but- The name of it's changed, but that's it. Well, you'd have different trustees, you'd have different foundations, you'd have different funding devices, so- What's your best case from Louisiana Supreme Court that speaks to Chief Judge Owen's question about how, are we putting too much weight on that language? I don't have a case that speaks to that besides the one that I cited and the statute that I cited, but I would just simply point out that the other side doesn't have a case that allows for this either. Frankly, it's neutral to me. How do you decide one way or the other? Well, and if I could just very briefly, the two documents that they point to, I think, are telling, because the first document is found in Mr. Cook's, or Dr. Cook's record excerpts of page one and two, and that is the minutes of the old Marshall Heritage Foundation that they claim divides the trust. And if you look at page two, it talks about dividing the foundation's assets and obligations, including the excess distribution carryover reflected on the foundation's form 990 PF. It doesn't say anything about transferring the beneficial interest in paroxysome or assigning that interest. It doesn't even talk about paroxysome, it doesn't even talk about a beneficial interest. What's the point of dividing the foundation then? Well, I think that's pretty clear in the documents that were submitted and are in our record excerpts back in 2013. How would you characterize the purpose of dividing the Marshall Heritage Foundation into two? Well, I think the purpose was to avoid the exact type of stalemate that we're in right now, because the brothers were fighting. And I think everyone felt at the time, back in 2013, let's separate these two trusts, let's separate the two brothers, and let them each go on their way. If your reason is right, that would mean that there was no income to the separate entities, isn't that correct at all? Well, that goes to my next point, which is the right to the separate income. I think if paroxysome had been split, as was intended, as was laid out in the order and those motions and everything that was filed back in 2013, then I assume that Preston would have taken his half of paroxysome and designated his new foundation, the Legacy Foundation, as the new beneficiary. And Pierce Marshall would have taken his half of paroxysome, and he would have created a new designation for the beneficiary for the plaintiff in interest is right now. That's the difficulty. It seems like we understand the intent on the first stage, and then it wasn't followed through with on the second phase, and here we are with this problem. Exactly, Your Honor, and I think it's telling that in the document it doesn't say that the plaintiff in interest will be a beneficiary of the paroxysome trust. It says it will be the beneficiary of one of the divided new paroxysome trusts, which don't exist because it never happened. And then finally, the only thing I would point to is the third document that they point to is this order from the 14th JDC, which indicates that, carries out the decantation, and says that the old Marshall Heritage Foundation will be divided. Interestingly enough, in that same document, in that same order, it says right above that that the paroxysome trust will be divided, which never happened. So they were part and parcel with each other. Can we look at those documents and glean the intent of the various parties to this transaction? We understand what they were aiming at. Frankly, Your Honor, I don't think you need to do that. I think all you need to look to is the paroxysome trust agreement itself. Yeah, but if we, well, if Chief Judge Owen is right, that that language doesn't actually settle the question. Don't we have to look to the settler's intent? Well, that would make sense. And certainly, you're supposed to look to the settler's intent in construing the trust, and construing it strictly, I might add. And just finally, I notice my time's about to run out, but in that order, decanting both the old Marshall Heritage Foundation and allowing the paroxysome trust to be decanted, it doesn't say anything about amending the paroxysome trust agreement, about creating successor beneficiaries, or assigning or transferring any beneficial interest into the plaintiff in interest that's here today. What is the status, if it's still ongoing, of the state court litigation about whether paroxysome trust was to be divided? It is still ongoing, Your Honor. My superficial understanding is that there was a motion to recuse filed, and that they are waiting for an ad hoc judge to be appointed by the Supreme Court to hear the motion to recuse. I may have, there's so many proceedings, I may have. That may be a different one, but I think that's in re paroxysome. Still at a trial level. Still at a trial level dispute, as far as I know. Opposing counsel might have better information on that. Thank you very much, Your Honors. Good afternoon. I'm Gene Fendler, appearing here on behalf of Applea, Dr. Cook. You raised a waiver issue at page 2021 of your brief, to which the reply brief responds. How about expressing that waiver claim to us? May I get the brief, Your Honor? Last paragraph, beginning on that page 20. Preston now raises a new erroneous appellate argument. I'm sorry, Your Honor. That was page 25, did you say? 20. 20. My mistake. New paragraph at the bottom. I see it now, Your Honor. Well, as we stated there, Preston had not raised this argument before the district judge, and we believe that he put it in his appellate argument here for the first time, and therefore it should be deemed to be waived. And if we agree that there was waiver, does that end the entire appeal? No, Your Honor, I don't think so, because that was just related to Article 2001 of the Louisiana Trust Code. We simply believe that he should have brought that at the first instance before Judge Fallin, and therefore at least that particular argument should not be brought before Your Honor, although I am prepared to address his argument with respect to Article 2001. All right. Well, Your Honors, very briefly, we're here today because Preston Marshall is seeking to thwart the wishes of the settler of the Proxy Zone Trust, who donated $100 million to see that the income off of that trust for a period of 20 years should go to charity. It was a fully funded trust, and Preston Marshall, by his actions, has thwarted these desires. As Counsel for Appellant mentioned, as the Court wills knows, the effort here should be to try to abide by the desires of the settler of the trust and see that those wishes are carried out, and they are not. Preston Marshall has locked up millions of dollars here that should have been going to charity, now for a period after allowing it for two and a half years, has not only locked up the funds, but through his actions, has caused the assessment of taxes, interest, and penalties, just for year 2017 alone, of almost $3 million. That money is probably going to have to go to the IRS. It has been assessed, and it's not going to be available to go to the new Marshall Heritage Foundation and thence to charities such as Tulane University. Judge Fallon correctly held that the Marshall Heritage Foundation, and by that, as I address it, I will mean the new Marshall Heritage Foundation, is a beneficiary of the Proxas Owned Trust. He correctly held that Preston was obligated to allow these mandatory distributions and that he has prevented, through his actions since 2016, June of 2016, some $11 million of mandatory distributions to be thwarted and not to be paid out, all as part of his scorched earth war with his mother and his brother, Pierce Jr., as well as the family friend and trustee here in Appalachia, Dr. Stephen Cook. Now, Preston Marshall has had a lot of reasons that he has put before various courts as to why he is not allowing this. It is not a simple, single reason, as was argued to you by Appellant. Number one, he stated in his original brief the three issues that should be before this court were whether the beneficiary status of a beneficiary trust can be transferred to another trust against the explicit language of the donor trust instrument. As I've already heard some discussion from your honors, there is no such language in the Proxas Owned Trust that prevents this decanting of the trust and dividing of the trust, and more on that in a moment. Another, he says, the other issue on appeal is whether the beneficial interest in the potential, potential, he says, future income distributions can be considered to be an asset of the trust on the effective date of the division, and he points to Article 2030 of the Trust Code. Well, as both the Louisiana Supreme Court and this court have recognized, that beneficial interest is incorporeal, movable property. The Louisiana Supreme Court specifically has said it is incorporeal, movable property, and as such, that creates rights enforceable by the beneficiary as well as by creditors, which this court has held. Clearly, it's an asset as found in Article 2030. And then finally, in his original brief, Appellant says, even assuming the plaintiff in interest should now be considered a beneficiary of the Proxas Owned Trust, Preston was in breach of his duties, was not in breach of his duties, given the language of the trust instrument reasonably calling into question the new foundation's beneficiary status, the issue that we talked about a moment ago, and the potential adverse tax consequences. Well, the tax consequences that were hypothesized by Preston Marshall are speculative. They're not supported by the very IRS sections cited by Appellant. But what is not speculative is the nearly $2.8 million in assessments by the IRS for 2017 that now must be dealt with. And then finally, in the opposition to our motion for the court to take judicial notice of this tax assessment, Preston Marshall states the issue before the court is whether the Marshall Heritage Foundation is a lawful and properly designated beneficiary of Proxas Owned, narrowing and narrowing it down. In his answer to the lawsuit that we filed some time ago, Preston Marshall gave only two reasons for his failure to proceed with authorizing these payments. Those two reasons were Dr. Cook is not a valid trustee. If you'll look at the briefs on appeal, you'll see that that argument has now been abandoned. His second reason given in his answer was the Marshall Heritage Foundation was not in being at the time of the creation of the Proxas Owned Trust. Both of these defenses, by the way, were rejected by Judge Fallon and apparently have been abandoned by Preston in this appeal. His post hoc rationale for not allowing, not authorizing these distributions from the Proxas Owned Trust to the Marshall Heritage Foundation have changed with every brief that he has filed in these proceedings, including his opposition to the motion to take judicial notice. He argued, he has previously argued that Mrs. Marshall was attempting to control the Proxas Owned Trust and that was going to cause catastrophic tax consequences. Well, Judge Fallon rejected that argument. He said even if there were tax consequences, there's no evidence that Mrs. Marshall herself could not bear those tax consequences. He questioned whether or not the Marshall Heritage Foundation was even a qualified charitable tax qualified entity. When we produced documents that showed the IRS had recognized them, that argument has gone away. He, of course, has made the argument that the old Marshall Heritage Foundation couldn't transfer its rights to receive unpaid future distributions. He said, well, when the Marshall Heritage Foundation ceased to exist, it was up to Preston and Pierce's co-trustees to decide where then to distribute these Proxas Owned Trusts. I understand that to be the principal argument on appeal, the last one, relying on the language of the Proxas Owned Trust. Specifically, that sentence I read, if the Marshall Heritage Foundation is not an organization described in sections of the Internal Revenue Code, what is your response to that argument? Your Honor, the trust instrument in no way, let's recognize a couple of things. My first point, I believe Your Honor pointed out earlier to opposing counsel. That is, the language that was relied upon by Preston's counsel is from the form that's approved by the Internal Revenue Service for these clats. It is a language to maintain the status, as Your Honor probably knows, these clats are very strictly looked at by the service. And so it is very important that the beneficiaries, that the charitable lead beneficiary, be indeed a charitable institution. That's front and center, that must be met. Therefore, that language that is pointed out by Mr. Marshall is nothing more than an effort by the settlor to be sure that this Proxas Owned Trust that she has settled maintains its status as a clat and that the beneficiaries be such that any payments to them will be recognized as charitable donations because a clat is a taxable entity. However, it has an unlimited charitable distribution or contribution. So to the extent it is paying out to qualified entities, there will be no tax. That was critical. And of course, that is what has led us today to where we are with this IRS tax assessment because these payments weren't made. Therefore, there were no charitable contributions and the income is to be taxed. If we were to conclude that that language is silent as to whether under the Proxas Owned, I can't pronounce it, Trust, permitted the original Heritage Foundation to be divided, where would, where do we look to resolve whether it's permissible or not? I think it's actually, there's a very simple answer. I think you look at the Trust Code Article 2030. Article 2030 specifically says it grants the right to divide or to combine trust. This trust was divided or decanted by resolution, unanimous resolution of all of the trustees of the Marshall Heritage Foundation, including Preston Marshall. Later in early 2014, the new Marshall Heritage Foundation and the Marshall Legacy Foundation were both established. Thereafter, Preston continued to make these payments for two and a half years. If Preston is correct, the two divided entities would have no income. Is that correct? The two divided? The successor entities would have no income. I'm not sure which successor. If we were talking about the two derivative entities, the Marshall Heritage Foundation and the Marshall Legacy Foundation, no, they would have income. They would be receiving about $3.5 million each, each year for 20 years. If they're right, they wouldn't have a guaranteed right to the 6 point whatever percent, right? They wouldn't have, I'm trying to sort of, if he's right, if they're, well, I'm not sure I understand either, but if they're right when the two new trusts were decanted, that's the right term, right? Well, when they were, when the original was decanted. The original was decanted into two new ones. Yes. They did not automatically get the right to the 6 point something percent of income from the Peroxisome Trust. That's their view. That's totally incorrect. And your view is, no, the Louisiana Trust Code recognizes the right of a trustee to decant. Absolutely. So they are successors to those interests. Yes. I guess my point is that under his reading of the language that's at issue, if he's right, he says there would be no income to the two decanted or the newly divided trusts. Oh, yes, that's right. So there would, what would have been the, my bottom line question is what is the point of creating two new trusts when, aha, they have no income? Exactly. That makes no sense to me. It doesn't make any sense at all, Judge Owen. Let me, let me go further about this. If Preston Marshall thought that there was something untoward or something illegal or something wrong about dividing the old Marshall Heritage Foundation, and as such there would be nothing going to Marshall Legacy Foundation or the Marshall Heritage Foundation, then he breached his responsibilities as a trustee both of the Peroxisome Trust and of old Marshall Heritage Foundation because if he's right and nothing is going to go to these two derivative entities that stepped into the shoes of Marshall Heritage Foundation, then he's totally thwarted what his mother set out to do with the $100 million donation. Surely that is not the law. What, this litigation that's ongoing, and you could give us your view of the status of it. Yes, sir. The Peroxisome Trust is to be divided, I assume that means into two entities. Is that an attempt to solve the very issue we have before us today? No, it's not an attempt to solve anything, Your Honor. It's an attempt by Preston Marshall to gain control of half of the funds, sole control, so that he can do with it whatever it is he must have in mind to do. There are these safeguards built in with two trustees for the Peroxisome Trust, and then for these new entities there's the, for the Marshall Heritage Foundation there are three trustees. For the Marshall Legacy Foundation there are three trustees. And two of the same for each one, and then one son with one and one son with the other. Mother and the doctor, Cook. Yes. And one son with one, and mother, doctor, and the other son with the other. Yes, that's true, Judge Barksdale. There would be those three, one son with each. There would. But that, by the way, is not one of the issues that Mr. Marshall has raised on this appeal, that suddenly, you know, if you read the order from the judge in the 14th Judicial District Court over in Lake Charles, they require, it speaks of the Peroxisome Trust, it speaks of the Marshall Heritage Foundation, and it speaks of two other trusts, they require an affirmative act after the judge's order was entered. That is, if the trustees agree, then there will be certain steps taken. The trustees did agree that the Marshall Heritage Foundation would be decanted into those two. The trustees did not agree, and Preston Marshall did not complain, and no efforts were made, there is no evidence in the record that Preston Marshall took steps other than now, years later, filing this lawsuit in the 14th Judicial District Court to try and split the Peroxisome Trust. Nor does either the order in the 14th Judicial District Court, nor the resolutions found in the records of the old Marshall Heritage Foundation, in any way say the split of the Marshall Heritage Foundation is contingent or conditioned upon the division of the Peroxisome Trust. There are statements in the record that that was one of the intended acts, but one was not conditioned upon the other. I would argue to the court that the Marshall Heritage Foundation and its trustees satisfied all of the conditions found in Article 2030 of the Louisiana Trust Code. That what happened was when the Marshall Heritage Foundation was decanted, it did not cease to exist. It simply became two, and these two new entities stepped into the shoes of the Marshall Heritage Foundation. Judge Fallon was correct in all respects when he found that there was no authority that said that the Marshall Heritage Foundation could not be divided in this regard. He found that Preston Marshall breached his obligations as a trustee of the Peroxisome Trust. No ifs, ands, or buts, no conditions there. He breached his obligations. He was in bad faith. The highest duty, the fiduciary duty that he had to the Peroxisome Trust and to his mother, the settlor, was to carry out her wishes. Yet he came up with all of these many reasons as found in our brief, narrowing finally to the reason that we're arguing today, to see what he could do to make it difficult for his mother. Today, we are faced with the situation with the 2017 assessment of penalties, taxes, and interest. We've still got 2016, 2018, perhaps even 2019, and Judge Fallon ultimately, just recently, lifted the stay in the order that he had issued. He initially stayed it without a bond, but after a motion for reconsideration, he lifted the stay. He's affirming his finding here that there was nothing that would prevent the Marshall Foundation from becoming, the new Marshall Foundation, from becoming a beneficiary to allow these charitable wishes to be carried out and for the pledge to be honored to Tulane. Thank you very much for your attention. What opposing counsel argued and what I think seems to be one of the central questions is, what in the Peroxisome Trust Agreement itself prohibits the old Marshall Heritage Foundation from transferring its interest or beneficial interest to the new plaintiff in interest in this case? First, I would argue that it implicitly prohibits a transfer because it designates that entity, that old entity, as the sole beneficiary. So I wonder, could the old Marshall Heritage Foundation have simply said— Why would Preston and the other trustees agree to split the Marshall Heritage Foundation into two new trusts that would have no income, no guaranteed income? They would not have, and they didn't. The entire agreement was that Peroxisome would be split into the two funding trusts, and those two funding trusts would fund the two foundations. And for whatever reason, and what you won't see in the record is Pierce's reason for refusing to abide by that agreement that was done in 2013 whereby Peroxisome Trust was split. Why won't he do that? Why won't Preston authorize the distributions? You could just as easily put the shoe on the other foot and say, why won't Pierce agree, which everyone agreed to back in 2013 unanimously, to split Peroxisome into two separate trusts that would fund these two separate foundations? That was the agreement. That's what the order says. That's what the petition says. That's what everybody agreed to. And for whatever reason, Pierce won't do it. The motion and the memorandum which memorialize that agreement are in our record excerpts from 37. To 47, and the order is in our record excerpts at 48. Record excerpts 47 and 48? It's basically 37 to 48, I think, is the whole gamut. Pages? Yeah. Does that mean you think that contrary to what opposing counsel said, the split of the Marshall Heritage Foundation into two was sort of contingent, or the effectiveness of that was contingent on the Peroxisome Trust also being split? So that if both pieces of the puzzle fell into place, then you'd have the guaranteed income streams going where everybody intended them to go. Well, I think ultimately that's what would have happened, but ultimately it wouldn't have been the split that it was contingent on. It would have been one of two things. It would have been, and I understand Your Honor is not quite with me necessarily on the language of the trust agreement, but it would have been either the concurrent agreement, unanimous agreement of the two trustees from time to time as they agreed to fund the new foundations, or what presumably would have happened is that they would have formally amended the two new separate Peroxisome Trusts to formally designate the two new separate foundations as the successor beneficiaries. That's what Preston always intended to do. In that case, the income to the new split trust would have been guaranteed. Would have been guaranteed? It would have been the same. Instead of having 6 point whatever percent to the original one, we would have had 3 point something percent to each of the new ones. 3.3 or whatever it is from each of the new Peroxisome Trusts, which is what was agreed to. Along those lines, in terms of the change in position so-called, Preston from the very beginning filed a declaration very early in this action. We've always taken the position from the very beginning that the plaintiff in interest was not a formally designated beneficiary of the defendant in interest of the Peroxisome Trust. And he said in his declaration filed shortly after the suit was filed, because the whole thing was contingent upon, in Your Honor's terms, dividing the Peroxisome Trust. After a couple of years, I realized that wasn't going to be done. So I think that should be done. And I went to the 14th JDC to try to get that done. Now, I will admit that after the lawsuit was filed, and that's his position to this day, but in the meantime, after the lawsuit was filed, his expert discovered that the plaintiff in interest had never filed the proper paperwork. And so we added that as a reason and et cetera. With no further questions, thank you very much, Your Honors. That concludes the arguments for today. Court is adjourned until tomorrow afternoon.